IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

KOBI COOKE and DONALD COOKE,⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Plaintiffs,⠀⠀⠀⠀⠀⠀⠀)⠀⠀TC-MD 130428D
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
DEPARTMENT OF REVENUE,⠀⠀⠀⠀⠀)
State of Oregon,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Defendant.⠀⠀⠀⠀⠀⠀)⠀⠀**FINAL DECISION**

The court entered its Decision in the above-entitled matter on March 17, 2014.  The court did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14 days after its Decision was entered.  The court's Final Decision incorporates its Decision without change.

Plaintiffs appeal Defendant's Notice of Refund Denial dated June 28, 2013, for the 2012 tax year.  A trial was held in the Oregon Tax Courtroom on February 10, 2014, in Salem, Oregon.  Donald Cooke (Cooke), appeared and testified on behalf of Plaintiffs.  Jacob Ramirez also testified on behalf of Plaintiffs.  Tony Inovejas (Inovejas), Tax Auditor, appeared and testified on behalf of Defendant.  Plaintiffs' Exhibits 1 to 4 and Defendant's Exhibits A to L were received without objection.

I.  STATEMENT OF FACTS

For the 2012 tax year, Plaintiffs claimed a working family child care credit (working family credit) and a child and dependent care credit (child care credit) based on total child care expenses of $8,880.  (Ptfs' Compl at 1-2.)  Defendant denied Plaintiffs' claimed working family credit and child care credit based on its determination that Plaintiffs "did not provide valid proof of payment of child care expenses."  (*Id.* at 2.)

Cooke testified that, in 2012, he worked as a barber and his wife was employed by the VA Hospital in Portland. He testified that, in 2012, Jeanne M. Wagner (Wagner), owner of Buckle My Shoe Childcare, provided child care for Plaintiffs' children, who were three and five years old at the time, while Plaintiffs worked. (*See* Ptfs' Exs 2-3 (affidavit of Wagner; year-end summary of payments; and contract).) For the 2012 tax year, Defendant received a Form W-10 from Buckle My Shoe Childcare Inc. reporting the provider's taxpayer identification number and signed by Wagner on January 17, 2013. (Def's Ex D.) The Form W-10 states that Plaintiffs paid $8,880.00 for child care in 2012. (*Id.*) Plaintiffs provided an affidavit of Wagner dated December 5, 2013, stating that Plaintiffs "made the following payments in cash." (Ptfs' Ex 2 at 1.) A 2012 year-end statement listing child care payments totaling $8,880 is attached. (*Id.* at 2.) Plaintiffs provided a "Buckle My Shoe Parent Contract" signed by Kobi Cooke on September 6, 2011, that states the payment rate, child care schedule, and payment deadline. (*Id.* at 3.)

Plaintiffs provided monthly day care ledgers for 2012 identifying Plaintiffs as the "parents," Plaintiffs' children as "dependent(s)," and listing Plaintiffs' telephone numbers. (Def's Ex C.) The ledgers clearly identify the "time in," "time out," "hours," and "total" for each day that child care was provided. (*Id.*) Weekly payments are identified by the amount and the notation "Pd." (*Id.*) Inovejas testified that he did not accept the ledgers as proof of payment because he did not think the entries were made contemporaneously. Cooke testified that, contrary to Inovejas' belief, the ledger entries were made contemporaneously by Wagner.

Inovejas testified that he does not question whether Plaintiffs were gainfully employed in 2012 or whether they had sufficient funds to make child care payments; rather, he questions whether Plaintiffs provided sufficient proof that they made the child care payments claimed.

Although Plaintiffs provided contact information for Wagner, Inovejas testified that he did not attempt to contact Wagner. On cross-examination, Inovejas testified that, except for bank statements, Plaintiffs provided all information requested by Defendant.

Inovejas testified that Plaintiffs were required to comply with Defendant's published guidance on the 2012 Schedule WFC. (Def's Ex I.) The publication provides instructions to complete the Schedule WFC and discusses "[p]roof of qualifying child care expenses." (*Id.* at 2.) Inovejas noted the statement "[a]cceptable proof **may** include, **but** is **not** limited to, legible copies of * * * [s]igned receipts from the child care provider received at the time of payment." (*Id.* (emphasis in original).) The publication further states that "[r]eceipts should include: [t]he child's full name[;] [d]ates of care[;] [d]ate and amount of child care paid[;] [n]ame of person or agency paying[;] [p]rovider's name, address, and telephone number[;] [p]rovider's identification number (SSN/FEIN)[; and] [t]he method of payment (check, money order, cash, etc.)." (*Id.* at 2-3.) Cooke testified that, in his view, the publication provided examples of proof, not required documentation. Inovejas disagreed, testifying that the documents listed are required and Defendant may request more information under ORS 314.425. (Def's Ex L.)

## II. ANALYSIS

The issue before the court is whether Plaintiffs are entitled to a working family credit and a child care credit for the 2012 tax year based on claimed child care expenses of $8,880.

ORS 315.262 provides a refundable credit, the working family child care credit, for qualifying taxpayers to partially offset child care costs incurred while taxpayers are working, attending school, or "seek[ing] employment."[1] ORS 315.262(3) states in, part, that "[a] qualified

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

taxpayer shall be allowed a credit against the taxes otherwise due under ORS chapter 316 equal to the applicable percentage of the qualified taxpayer's child care expenses * * *." Under ORS 315.262(1)(a), "child care" is "care provided to a qualifying child of the taxpayer for the purpose of allowing the taxpayer to be gainfully employed, to seek employment or to attend school on a full-time or part-time basis[.]" "[T]he [working family] credit is limited to costs associated with child care" and such costs "must be made by the parent claiming" the working family credit. OAR 150-315.262(3). "Payments made by an entity or individual other than the parent claiming the credit are not payments made by the taxpayer." *Id.*

ORS 316.078 provides a nonrefundable credit, the child care credit, for certain "employment-related expenses," including child care, paid by a taxpayer for the care of a dependent child or children. The child care credit is specifically tied to IRC section 21. The child care credit is "equal to a percentage of employment-related expenses allowable pursuant to section 21 of the Internal Revenue Code * * *." ORS 316.078(1); *see also* OAR 150-316.078(1).[2] IRC section 21(a)(l) provides a credit for a "percentage of the employment related expenses * * * paid by such individual during the taxable year." "Expenses are employment-related expenses only if they are for the purpose of enabling the taxpayer to be gainfully employed. The expenses must be for the care of a qualifying individual or household services performed during periods in which the taxpayer is gainfully employed or is in active search of gainful employment." Treas Reg 1.21-1(c).

Plaintiffs have the burden of proof and must establish their case by a "preponderance" of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of

---

[2] OAR 150-316.078(1) states: "When calculating the Oregon child care credit, taxpayers must use the same employment related expenses used for calculating the federal credit, subject to the same limitations and eligibility requirements outlined in the IRC Section 21."

evidence, the more convincing evidence * * *." *Feves v. Dept. of Revenue,* 4 OTR 302, 312 (1971). This court has stated that the preponderance standard "mean[s] more likely than not." *Parker v. Department of Revenue*, TC-MD No 101057C, WL 4763133 at *7 (Oct 8, 2012). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet [their] burden of proof." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990).

Based on Inovejas' testimony at trial, the court understands that Defendant has placed considerable weight on its published guidance to taxpayers claiming the working family credit. (*See* Def's Ex I.) Inovejas testified that, in his view, Plaintiffs' evidence was insufficient because it did not include receipts with all of the information listed in the published guidance and because Plaintiffs did not provide "bank statements or bank receipts showing cash withdrawals * * *." (*Id.* at 3.)

The court agrees that it is important for taxpayers claiming the working family credit to maintain good records and provide adequate substantiation that they are entitled to the credit claimed. Canceled checks or contemporaneous, signed receipts that include the date, the name of the individual who paid cash, and the amount paid are examples of evidence that provides adequate substantiation. *See Shirley v. Department of Revenue* (*Shirley*), TC-MD No 130451N, WL 811543 at *3 (Mar 3, 2014). Ultimately, however, the court's task is to interpret and apply the controlling statutes in this case, ORS 315.262 and ORS 316.078. *See* ORS 174.010 ("[i]n the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted or to omit what has been inserted"). There is no statutory requirement that taxpayer maintain a bank account and the court is not bound by the Department of Revenue's published guidance, which is provided for the benefit of taxpayers claiming the working family credit.

To determine whether a taxpayer is entitled to the working family credit claimed, the court weighs all of the testimony and evidence presented under a preponderance of the evidence standard, as required by ORS 305.427. In the context of the working family credit, the court has allowed the credit when the taxpayer provided credible testimony and some written substantiation, even if not perfect. *See e.g., Rosette v. Department of Revenue*, TC-MD No 080862D, WL 1311525 at \*3 (May 12, 2009) (finding "Plaintiff's sworn testimony and the nonconsecutive dated and signed receipts provide sufficient information to meet the statutory requirement of preponderance of evidence" despite some problems with the receipts and the child care provider's failure to file a personal income tax return).

There is no dispute that Plaintiffs worked in 2012, that they received sufficient income to pay for the claimed child care, or that their children were "qualifying" children within the meaning of ORS 315.262(1)(f). There is no contention that Plaintiffs had a familiar or other relationship with their child care provider, which might suggest the transaction was "not arm's-length." OAR 150-315.262(b)(F); *see also Carter v. Dept. of Revenue,* TC-MD No 080689C, WL 1351818 at \*3 (Apr 30, 2009) ("[t]ransactions between related parties rightly generate heightened scrutiny, because of the increased potential for favorable treatment (*e.g.,* leniency when the taxpayer cannot afford some or all of the amount due)"). The only issues raised in this case are whether Plaintiffs, rather than another "entity or individual," made the claimed child care payments and whether $8,880 was the amount of the payments. *See* OAR 150-315.262(3).

Cooke testified persuasively that Plaintiffs paid Wagner to provide child care for Plaintiffs' two children in 2012. The court found Cooke to be credible and accepts his testimony as true. No evidence was presented to suggest that any individual or entity other than Plaintiffs paid for the care of Plaintiffs' children in 2012.

The remaining question is whether Plaintiffs adequately substantiated that their child care payments in 2012 totaled $8,880. "When a taxpayer decides to pay cash for child care expenses, the taxpayer has the burden of providing sufficient evidence to substantiate the total amount of the claimed expense." *Shirley*, WL 811543 at *3. Here, Plaintiffs provided a child care contract stating that Wagner would provide child care for Plaintiffs' children three days a week for $50 per day, or $150 week, with the option of providing child care on two additional days each week. Plaintiffs provided detailed ledgers indicating the dates and times that child care was provided and the date and amount of payments. The ledgers are consistent with the child care contract and match the year-end statement attached to Wagner's affidavit and previously provided to Defendant. Based on that evidence and Cooke's credible testimony, the court is persuaded that Plaintiffs paid $8,880 to Wagner for child care in 2012.

## III. CONCLUSION

After carefully considering the testimony and evidence presented, the court concludes that Plaintiffs paid child care expenses totaling $8,880 in 2012. Now, therefore,

IT IS THE DECISION OF THIS COURT that for the 2012 tax year, Plaintiffs are entitled to a working family credit and a child care credit based on child care expenses of $8,880.

Dated this ___ day of April 2014.

ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by* <u>mailing</u> *to: 1163 State Street, Salem, OR 97301-2563; or by* <u>hand delivery</u> *to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within* <u>60</u> *days after the date of the Final Decision or this Final Decision cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on April 3, 2014. The court filed and entered this document on April 3, 2014.*